HIPP & CO. v. SOUTHERN RAILWAY CO.

1. EVIDENCE.—Where irrelevant testimony has been received, and no suggestion of injury thereby to defendant is made, the judgment will not be disturbed.

2. IBID.—CHARGE.—The admission of irrelevant testimony may be cured by the Judge in his charge.

3. BILL OF LADING—JURY—TITLE—NONSUIT.—The bill of lading in

this case was transferred as a mere security for debt, which did not carry the title, and this was a question of fact for the jury.

4. RAILROADS—WAREHOUSE.—Cars in which goods are transported, and from which they have never been moved, is not a warehouse.

5. IBID.—JURY—NONSUIT.—Whether the cotton in question was ever delivered by the carrier was a question of fact for the jury.

6. CHARGE—WAREHOUSE.—It was not error for Judge to charge the jury that there was no evidence here as to warehouse.

7. RAILROADS—COMMON CARRIER—WAREHOUSE.—To change the liability of a common carrier from transporter to warehouseman, there must be some delivery from the car in which it was shipped to the thing used as a warehouse.

8. CHARGE.—It was not error to refuse to charge defendant's requests.

Before BUCHANAN, J., Richland, October, 1896. Affirmed.

Action by D. Hipp & Co. against Southern Railway Company, for value of three bales of cotton lost by it in transportation. Judgment for plaintiffs. Defendant appeals on the following exceptions:

1. Because the presiding Judge erred in overruling defendant's objection to the question propounded to the witness, D. Hipp: "For what purpose was it (the cotton) shipped to Columbia?"

2. Because the presiding Judge erred in admitting the evidence of the witness, Wise, over the objection of defendant, as to what was the highest price of cotton from the 1st of January to the time of trial; when it is submitted that the plaintiff should have been restricted to the proof of the price of cotton when it should have been delivered upon demand, or when plaintiff was notified of its arrival and should have received it.

3. Because the presiding Judge erred in admitting, over the objection of defendant, the testimony of the witness, Wise, as to whether Hipp & Co. stored other cotton with R. J. McCarley & Co. besides the 165 bales; and as to whether Hipp & Co. had other cotton in storage in McCarley & Co.'s warehouse at the time of the receipt of the 162 bales of cotton.

4. Because the presiding Judge erred in admitting, over

the objection of defendant, the testimony of the witness, Wise, as to what the witness did with the 162 bales of cotton received by him.

5. Because the presiding Judge erred in admitting, over the defendant's objection, the testimony of the witness, McCants, as to what was the price, average grade, of the 165 bales at the time the 162 bales were delivered to R. J. McCarley & Co.; also in permitting the same witness to testify as to what the average weight of a bale of cotton was.

6. Because the presiding Judge erred in admitting, over the objection of defendant, the testimony of the witness, Hipp, as to what was the highest market price between the times when the cotton (162 bales) was delivered and the present time.

7. Because the presiding Judge erred in overruling the defendant's motion for a nonsuit, which was based upon the following grounds: (1) Because the evidence showed that a warehouse receipt for the whole of the cotton was made out by McCarley & Co., warehousemen, by the instructions or directions of D. Hipp & Co., and delivered to the Loan and Exchange Bank, who were at the time of the alleged loss and are now in possession of and hold the said warehouse receipt; that, under the law, such warehouse receipt is made negotiable paper and transferable, and carries title to the property represented therein; consequently, the title to the 165 bales of cotton, supposed to be stored in said warehouse, is in the Loan and Exchange Bank, and plaintiff has no right or title thereto.   (2) Because the plaintiff, upon receipt of the bill of lading for the 165 bales of cotton from the defendant company, indorsed the same in blank and delivered it to the Loan and Exchange Bank for value, which said bank, or some other person, is in possession of said bill of lading, and the plaintiff is not in such possession; that, therefore, the title to said bill of lading and to the cotton represented therein is in the said Loan and Exchange Bank, or in the legal owner and holder of said bill of lading, and not in the plaintiff.   The plaintiff,

therefore, has shown no right to recover. (3) That the evidence disclosed that the cotton arrived at its point of destination, and the plaintiff paid the freight thereon and became aware of its arrival, but failed or refused to accept the same from the defendant company, who thereafter retained and held the same until such time as it should be called for by the person entitled to receive same; that the liability of the defendant, therefore, shifted from that of common carrier to that of warehouseman, and that as there is no negligence alleged in the complaint, and none shown in the evidence, the defendant is not liable as common carrier. (4) That by the clause in the contract, "All articles of freight on arrival at place of destination are at the risk and expense of the owner"—such stipulation being valid—on arrival of the goods in Columbia, the same were held and retained by the railroad company at the risk and expense of the owner; and that as no negligence was shown in the retention and holding of said goods by the evidence, said clause became operative, and the plaintiff, in the absence of any proof of negligence, cannot recover.

8. Because the presiding Judge erred in refusing to direct a verdict in favor of defendant at the close of all the evidence for defendant; because it is submitted that the facts in evidence being undisputed, it showed that the liability of the defendant, if any, was that of a warehouseman, in which capacity it had not been sued, the action having been brought against it as a common carrier.

9. Because the presiding Judge erred in charging the jury, as to the law of common carrier, that "a delivery means actual delivery, as ordinarily used, and a common carrier's liability terminates when the goods have been delivered to the place of destination and are placed in a properly constructed warehouse, subject to the demand of the consignee."

10. Because the presiding Judge erred, as matter of law, in charging the jury that, before the liability of warehouseman can exist, or a person assume the character of a ware-

houseman, there must be shown, to wit: There must be a warehouse, "there must be a delivery to that warehouse, and the termination of the common carrier must have ended;" whereas, it is submitted that the liability of a common carrier and that of a warehouseman may be changed, although there may actually exist no warehouse, or delivery to any warehouse, provided the goods are retained and kept by the railroad company or common carrier at a place and in a manner sanctioned by its usage and practice, and known to and acquiesced in by the shipper and the public.

11. Because the presiding Judge erred in refusing to charge defendant's requests numbers 1 and 2, which were as follows: (1) That if they believe from the testimony that upon the arrival of the cotton at Columbia, on December 23, 1895, R. J. McCarley & Co. were informed of such arrival, and were requested to take away and receive the same, and failed and neglected to receive it, then the liability of the defendant changed from that of a common carrier to that of a warehouseman, and there being no allegation and proof of a lack of ordinary care after such time, the plaintiff cannot recover. (2) That if they believe from the testimony that upon the arrival of the cotton at Columbia, on December 23, 1895, R. J. McCarley & Co. were informed of such arrival, and were requested to receive and take away the same, and they would not do so, but allowed it to remain in the yard of defendant until January 17, 1896, then, if they believe that such time was more than a reasonable time to remove the same, they must find for defendant, as the liability of defendant was that of a warehouseman, and as it was not sued in that capacity, there can be no recovery against it.

*Mr. B. L. Abney*, for appellant, cites: *Measure of damages for the cotton:* Rev. Stat., 1655; 7 Rich., 190; 26 S. C., 269; 5 Rich., 462. *Plaintiffs could not maintain suit because title not in them:* Rev. Stat., 1441. *Termination of liability as carrier:* 147 Ill., 550; 43 Ind., 423; 11 S. C.,

158; 28 L. R. A., 80. *Judge should have directed a verdict:* Code, 287; 42 S. C., 30. *Jury must find fact admitted or not controverted:* 26 Mich., 89; 57 Ill., 589; 91 Ill., 142; 120 Ill., 169. *Form of requests:* 82 Ill., 322.

*Mr. Wm. D. Melton,* contra, cites: *Exceptions too general:* 44 S. C., 373; 42 S. C., 272; 43 S. C., 99; 30 S. C., 167. *Evidence wholly irrelevant not prejudicial:* 40 S. C., 536. *Judge may cure errors in admitting testimony in his charge:* 37 S. C., 145; 9 S. E. R., 1193; 11 S. E. R., 778; 6 S. E. R., 200; 36 S. C., 49. *Measure of damages:* 5 Rich., 462; 40 S. C., 99; 18 S. E. R., 366; 8 S. E. R., 341; 30 S. C., 172, 615. *Nonsuit:* 26 S. C., 264; 29 S. C., 100; 23 S. C., 188. *Warehouse:* 11 S. C., 158. *When Judge may direct verdict:* 13 S. C., 376; 42 S. C., 28; 16 S. C., 104, 634; 38 S. C., 86; 26 S. C., 264. *Exceptions bad form:* 42 S. C., 122; 40 S. C., 533. *Charge:* 16 S. E. R., 845; 23 S. C., 210; 17 S. C., 71, 162; 16 S. C., 591, 632.

July 20, 1897. The opinion of the Court was delivered by

MR. JUSTICE POPE. This was an action in the Court of Common Pleas for Richland County, in this State, for the recovery of the value of three bales of cotton. The verdict was for $99.60 in favor of plaintiffs. After entry of judgment thereon, the defendant appealed to this Court. The grounds of appeal will be set out in the report of the case. A brief statement of the facts underlying the controversy shows: That on the 18th day of December, 1895, at Pomaria, S. C., a station on the defendant's railway, the plaintiffs shipped by defendant a lot of cotton containing 165 bales. The receipt therefor was substantially in these words: "Southern Railway Company. Pomaria, S. C., December 18, 1895. Received of D. Hipp & Co. 165 bales of cotton * * * weighing as below, consigned to order, notify R. J. McCarley & Co., Columbia, S. C., to be transported by the Southern Railway Company to their destination. * * * All articles of freight on arrival at place of destina-

tion are at the risk and expense of the owner. Loss or damage claims for cotton carried under this bill of lading will be settled only on basis of weights entered herein. Number of bales, 165. Weight, 71,000." These 165 bales of cotton occupied seven cars, and reached the city of Columbia, S. C., at noon of 20th December, 1895. The cars were tendered by the defendant company to the South Carolina Railroad Company to be transported to the warehouse of R. J. McCarley & Co., which warehouse was alongside the track of the latter road, but were refused by the South Carolina Railroad Company, because, as they alleged, R. J. McCarley & Co. were not then prepared to unload the said cars. The firm of R. J. McCarley & Co. certainly had notice of the arrival of said cars on the 23d day of December, 1895, for on that day said firm paid the freight charges on the whole 165 bales of cotton. The defendant placed the seven cars, with seals unbroken, on one of its side tracks, where they remained until the 17th January, 1896, at which date they were turned over to the South Carolina Railroad Company, and were at once carried to the warehouse of R. J. McCarley & Co., and when the last car came to be unloaded, the seals to the door were discovered to have been broken, and three bales of cotton abstracted therefrom. The 162 bales of the 165 bales were stored in the warehouse of said R. J. McCarley & Co., and the receipt therefor made out and delivered to the Loan and Exchange Bank, of the city of Columbia, S. C. On the back of the receipt for cotton given by the defendant railway company on the 18th December, 1895, to D. Hipp & Co., appeared the indorsement, "D. Hipp & Co.," written by the partner, Mr. William Hatton, and such receipt was placed by them (the said firm) in the hands of said Loan and Exchange Bank, from whom the firm had borrowed money. At the trial, the defendant admitted that there was a loss of three bales of cotton. The cotton (162 bales) was sold by D. Hipp & Co., in connection with another lot of 275 bales, on 10th June, 1896. Demand was made early in January,

1896, by R. J. McCarley & Co. upon the defendant railway company for the payment of the loss of the three bales of cotton, at $7\frac{5}{8}$ cents per pound. Payment was refused, and hence this suit.

We will consider the exceptions in groups as raising these questions: First. Did the Circuit Judge err in admitting certain testimony? Second. Did he err in refusing to grant a nonsuit? Third. Did he err in his charge to the jury? We will consider these questions in their order.

We will consider exceptions 1, 3, and 4 together. In the argument of respondent he has admitted that the questions addressed to the witnesses, Wise and Hipp, and the answers thereto were clearly irrelevant, and no injury to the appellant therefrom has been suggested. We can see no grounds for any notice of these exceptions by us.

Exceptions 2, 5, and 6 are intended to point out the error of the Circuit Judge in allowing three witnesses, McCants, Hipp, and Wise, to testify as to the highest price paid for cotton between the dates of 17th January, 1896, and time of trial, while appellant claims that plaintiff could not recover more than the value of cotton at the time of delivery, 17th January, 1896, with interest thereon from the date. If there was error in admitting this testimony, it was cured by the charge of the Judge to the jury, for he directed the jury in these words: "So, after all, what are you to find here? Has the plaintiffs made out their case by the preponderance of the evidence? If so, you should find his damages, *the value of the cotton at the time*, under the weights laid down in the contract" (italics ours). The verdict shows that the jury responded to this direction of the Circuit Judge. Hence, if there was error in the admission of the testimony looking to a different conclusion, it was abundantly cured by the charge of the Circuit Judge, and under our well-known rules we will not consider what has thus become mere abstract questions, and, therefore, the exceptions are overruled.

Second. Did the Circuit Judge err in refusing motion for a nonsuit? We have given care to the four grounds submitted for the nonsuit. Appellant's difficulty occurs from the evidence here submitted. The warehouse receipt given by R. J. McCarley & Co. to the Loan and Exchange Bank, at the direction of the plaintiffs, was only for 162 bales and did not include the three lost bales. Hence it could not be said that, in law, title was passed to the Loan and Exchange Bank for the three bales, which were not included in the warehouse receipt, by that receipt. So far as the bill of lading transferring the ownership of the whole 165 bales of cotton, including the three which were lost while in defendant's hands, that would be true, if the bill of lading was transferred to the Loan and Exchange Bank by D. Hipp & Co. absolutely, but it must be remembered that the evidence in this case tended to establish the fact that such transfer of the bill of lading to the Loan and Exchange Bank was only as a security for money borrowed, converting the transfer of the bill of lading of the 165 bales to be a mere security for money borrowed of the bank by D. Hipp & Co., and that the cotton was sold in June, 1896, by D. Hipp & Co., and paid for by that bank, thus evidencing that the title to such cotton was in said D. Hipp & Co. Frequently, in commercial transactions, these transfers are not intended to be absolute transfers of ownership in the property covered by the bill of lading, as between the transferer and transferee. In the case at bar, there arising questions of fact in regard to these matters to which testimony had been introduced, it would have been improper for the Circuit Judge to assume to pass upon such facts; they were for the jury.

The third ground for nonsuit would have presented a very nice and highly interesting point of law—very much like the delicate questions submitted in *Spears & Colton* v. *Railroad Co.*, 11 S. C., 158, if the facts in evidence had sustained the proposition. In the case just cited, the railroad had unloaded the goods from their

cars and placed them in storage in their depot at Union, where the goods were destroyed by fire; the question there was, did the railroad hold these goods as common carriers or as warehousemen? Such is not the question at bar. The defendant railway company retained the cotton sealed in the same cars in which it was transported, and there was no evidence that the whole number of bales was ever transported by the defendant company to the point of destination—city of Columbia—except the mere fact that the cars reached that city still sealed. The jury alone was competent to pass upon the fact whether the whole 165 bales had been actually transported to the city of Columbia. We are not prepared to hold that a railroad can transform its liability as a common carrier to that of a warehouseman, by simply retaining the goods transported, after reaching the point of destination, in the same cars in which the goods were shipped and transported. The idea of a warehouse seems to be bottomed upon some structure, or building, or place of storing, into which goods are deposited by the common carrier after reaching the point designated as the terminal point of shipment. We do not mean that cars may not be made a warehouse, but we do mean to say that a car in which goods are shipped and from which the goods are never transferred, but, on the contrary, are left intact therein, cannot be considered and held a warehouse in the eyes of the law.

As to the fourth ground of nonsuit, we cannot say that the Circuit Judge erred in refusing to make an order of nonsuit, merely because there was such a clause in the contract as is set out here. We repeat, that there was no other proof that the defendant appellant had brought on its cars the three bales of cotton lost to the city of Columbia, except that the car reached the city sealed. All such matters are for the jury and not for the Circuit Judge. The eighth ground of appeal seems to us to be met by the foregoing views on the motion for a nonsuit, and is overruled.

Third. Did the Circuit Judge err in his charge to the jury; was there error, as pointed out in the ninth exception? It seems to us that the charge was good law when applied to the evidence in this cause. There was no change in the condition of the goods shipped. When the city of Columbia was reached, the cotton was still kept in the cars. Only the freight or charges of a common carrier were ever demanded by the appellant. The delivery of the cotton shipped to the South Carolina Railway Company was in the cars in which it had been originally shipped after nearly an interval of thirty days from date of reaching destination and date of its delivery. We do not mean to say that the defendant railroad might not, if it had seen proper, have placed this cotton in a warehouse, and charged for same, but the evidence shows conclusively that no such thing happened or was contemplated. Strictly speaking, there was no necessity for this change. We presume it was made because the appellant insisted that it was sued as a common carrier and not as a warehouseman. But there was no testimony that the cotton had ever been unloaded and stored by the defendant, and the Circuit Judge might very well have stated that there was no testimony before the Court on the subject of a warehouse or warehouseman, and contented himself therewith, going no further.

In exception 10, the appellant contends that the Circuit Judge erred in stating to the jury that, before the liability of warehouseman can exist, or a person assume the character of a warehouseman, "there must be shown, to wit: There must be a warehouse, there must be a delivery to that warehouse, and the termination of the duty of the common carrier must have ended." Appellant submits that the liability of a common carrier "and that of a warehouseman may be changed, although there may actually exist no warehouse or delivery to any warehouse, provided the goods are retained and kept by the railroad company or common carrier at a place and in a manner sanctioned by its usage and practice, and known to and acquiesced in by

the shipper and the public." As before remarked, we do not see how there can be any question of warehouseman in the case at bar. There was no change in the property from the cars in which they were transported and from which delivery was made. How could there be any satisfactory conclusion as to what was stored as a warehouseman, when goods were not changed from the car in which the same were transported? There must be an initial point in the matter of liability as a warehouseman and this initial point is the moment of storage. We have already, in a measure, indicated our views on this subject.

The Circuit Judge is charged with error in having failed to make the requests to charge. From what we have already said, there is no error chargeable to the Circuit Judge in not making these charges. Besides, it is assumed as a fact that the cotton reached its destination on 23d December, 1895.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.